```
IN THE UNITED STATES DISTRICT COURT
 FOR THE WESTERN DISTRICT OF WISCONSIN
```

JUNE E. ROUNDS-RHEAUME,

                Plaintiff,

  v.

                                                  OPINION & ORDER

JOHN C. DOWLING, BRIAN D. VAUGHAN,
SANDRA K. PRISBE, CYNDA DEMONTIGNY,              16-cv-146-jdp
BARB WOEHRL, and BOARD OF REGENTS OF
UNIVERSITY OF WISCONSIN SYSTEM,

                Defendants.

Pro se plaintiff June E. Rounds-Rheaume is proceeding on retaliation claims under Title VII and the First Amendment. Rounds-Rheaume sent grievances to her union and various government agencies about employment practices of her former employer, the State of Wisconsin Hygiene Lab, which is part of the University of Wisconsin. She alleges that defendants retaliated against her by reprimanding and suspending her in 2004 and that they continued to retaliate even after her resignation by intimidating her and interfering with her job search.

Both sides move for summary judgment. Dkt. 36 and Dkt. 45. All of Rounds-Rheaume's claims based on events that occurred in 2004 are time-barred because she failed to file a timely charge with the Wisconsin Department of Workforce Development Equal Rights Division (ERD) or the Equal Employment Opportunity Commission (EEOC). As for her claims based on the events after her resignation, they fail on the merits. Rounds-Rheaume adduces no evidence that any defendant intimidated her or interfered with her job search. I will grant defendants' motion and deny Rounds-Rheaume's motion.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Rounds-Rheaume worked at the State of Wisconsin Hygiene Lab from 1978 to 2004. She held various positions, including the Lab Sample Control and Receiving Technician position. Dkt. 40-17 and Dkt. 40-18. The Lab is part of the University of Wisconsin, and defendants John C. Dowling, Brian D. Vaughan, Sandra Prisbe, Cynda DeMontigny, and Barb Woehrl are all current or former employees of the University. The Lab and the University are not legal persons, so they are not defendants in this case; instead, defendant Board of Regents of the University of Wisconsin System, which governs the University and its programs, is Rounds-Rheaume's former employer. Dkt. 19, at 4.

In 2004, Rounds-Rheaume was reprimanded and suspended for one day without pay. Dkt. 52, ¶ 7. The parties dispute why. Rounds-Rheaume contends that the University retaliated against her for filing a grievance with her union asking for a non-hostile, non-discriminatory workplace. Dkt. 40, ¶ 11. According to defendants, Rounds-Rheaume was negligent in her duties, failed to exercise good judgment, and was discourteous to her coworkers, students, and the general public. Dkt. 40-11, at 1. Rounds-Rheaume resigned in June 2004.

Over the years that followed, Rounds-Rheaume sent letters complaining about the Lab to the Wisconsin Government Accountability Board, the Wisconsin Attorney General's Office, the Wisconsin Judicial Commission, the Wisconsin Employment Relations Commission, the Wisconsin Department of Natural Resources Water Division, and the Wisconsin Democracy Campaign. She adduces only the letters she sent to the Government Accountability Board and the Attorney General's Office. Those letters reported, among other things, Rounds-Rheaume's

2

being unfairly reprimanded by her supervisors, nepotism and inappropriate relationships among her colleagues, and missing items at the Lab. Dkt. 40-24, at 2-3 and Dkt. 29-3, at 1. Rounds-Rheaume also filed four charges with the ERD, claiming sex discrimination, age discrimination, hostile work environment, and retaliation. Rounds-Rheaume adduces her first, second, and fourth ERD charges. Dkt. 40-1, at 1-3, Dkt. 40-2, at 1-2, Dkt. 40-4, at 1-2. The missing third ERD charge and letters to the government agencies do not affect the analysis in this opinion.

Rounds-Rheaume contends that, even after she left the Lab, defendants continued to retaliate against her in two ways. First, she contends that Dowling, an attorney at the University of Wisconsin Office of Legal Affairs, wrote her intimidating emails. Dkt. 1, at 2-3. She states that Dowling criticized her ERD charges and told her to direct all matters regarding her employment disputes only to him. According to Rounds-Rheaume, she found Dowling's emails so intimidating that she lost confidence at her job interviews and, as a result, did not get those jobs. Defendants concede that Dowling wrote the emails, but they deny that Dowling's emails intimidated Rounds-Rheaume.

Second, Rounds-Rheaume contends that defendants retaliated against her by interfering with her job search. In particular, she states that she interviewed for security positions, but she could not get those jobs because defendants failed to provide accurate descriptions of her past positions at the Lab. Rounds-Rheaume adduces copies of her past job descriptions and a reference letter that the University's human resources department prepared after she filed her ERD charges. Dkt. 40-17; Dkt. 40-18; Dkt. 40-20. The job description states, in pertinent part, that Rounds-Rheaume's duties include "signing customers in and preparing the appropriate badge and identifying unusual packages or deliveries." Dkt. 40-18,

at 4. Rounds-Rheaume states that the job description should have included controlling entrance access and checking visitors' IDs. *Id*.; Dkt. 40, ¶ 7. She also adduces her own, unsworn statements to support the proposition that these documents caused her prospective employers' decision not to hire her. Dkt. 40-6, at 1-2. Defendants deny having sent any job description or reference letter to Rounds-Rheaume's prospective employers. Defendants adduce individual defendants' declarations that they had no contact with Rounds-Rheaume's prospective employers. Dkt. 46, ¶¶ 3-5 (Vaughan); Dkt. 47, ¶ 5 (Dowling); Dkt. 49, ¶ 5 (Prisbe); Dkt. 48, ¶ 6, 7 (DeMontigny); Dkt. 50, ¶ 5 (Woehrl). They also adduce the declaration of DeMontigny, who states that all reference requests at the University are forwarded to her but she received none. Dkt. 48, ¶¶ 6-10.

This court has subject matter jurisdiction over Rounds-Rheaume's claims because they arise under federal law. 28 U.S.C. § 1331.

## ANALYSIS

A district court must grant summary judgment when no genuine issue of a material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence in the light most favorable to the nonmoving party, but "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To withstand summary judgment, "a party may rely only on admissible evidence." *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

## A. Title VII retaliation claims

Rounds-Rheaume is proceeding on Title VII retaliation claims only against the Board of Regents. She contends that the Board of Regents is liable because its employees retaliated against her in three ways: (1) University employees suspended her for one day without pay and reprimanded her in 2004 for filing a union grievance; (2) Dowling intimidated her in emails because she filed complaints with ERD, GAB, and Attorney General's Office; and (3) University employees provided her prospective employers with inaccurate job descriptions of her past positions at the Lab. Dkt. 1, at 3-4. The first set of claims is time-barred; the remaining claims fail on the merits because Rounds-Rheaume adduces no admissible evidence to support them.

### 1. One-day suspension and reprimands in 2004

Rounds-Rheaume's claims based on employment actions in 2004 are untimely because she failed to file a charge with the ERD or the EEOC within 300 days of the alleged retaliation.

Generally, a Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged violation before suing in federal court. 42 U.S.C. § 2000e-5(e)(1). But in a "deferral state" such as Wisconsin, *see* 29 C.F.R. § 1601.80, the plaintiff has 300 days from the alleged violation to file her charge with an appropriate state agency. *Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1128-29 (7th Cir. 2002); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). In Wisconsin, the ERD has a work-sharing agreement with the EEOC "under which both agencies treat a complaint filed with one agency as cross-filed with the other." *Alvey v. Rayovac Corp.*, 922 F. Supp. 1315, 1326 (W.D. Wis. 1996). So "in Wisconsin, a charge of discrimination actionable under federal law is timely if it is filed with the [ERD] within 300 days of the alleged discriminatory act." *Id*. If the plaintiff fails to file a

charge within the 300-day window, the Title VII claim is time-barred. *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459-60 (7th Cir. 2007).

Here, Rounds-Rheaume was suspended and reprimanded in 2004, but she filed her first ERD charge in October 2006, more than 300 days later. She filed another charge in 2007 and two more in 2014. She did not file a charge with the EEOC. So she cannot prevail on a retaliation claim based on any employment action in 2004.

Rounds-Rheaume insists that her charges are timely because the Board of Regents and its employees engaged in continuing violations. The continuing violation doctrine can excuse an otherwise time-barred claim against "a single, ongoing unlawful employment practice if at least one related act occurs during the limitations period." *Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015). But that doctrine applies only to hostile work environment claims. *Id.* ("As the Supreme Court clarified in Morgan, however, this doctrine is limited to claims of hostile work environment."). Rounds-Rheaume cannot claim that she had a hostile work environment after 2004: she left her job in 2004.

2.  **Intimidation by Dowling**

Rounds-Rheaume contends that Dowling wrote her intimidating emails on January 29 and 30, 2014. Dkt. 1, at 2-3. I will dismiss this claim because no reasonable trier of fact could find that Dowling's emails were intimidating.

Here is Dowling's January 29 email:

> Your January 19, 2014 e-mail to Chancellor Rebecca Blank has been referred to me. You included with that e-mail a copy of a letter dated December 5, 2013 that you apparently sent to the Wisconsin Judicial Commission, the Wisconsin Government Accountability Board and a private organization, the Wisconsin Democracy Campaign.

6

> As you know, you have instituted several cases against the university concerning your employment at the Wisconsin State Laboratory of Hygiene, including complaints of discrimination and retaliation in the Equal Rights Division of the Wisconsin Department of Workforce Development, the Wisconsin Employment Relations Commission and the U.S. Equal Employment Opportunity Commission (EEOC). None of these cases resulted in any finding confirming any of your allegations.
>
> I have reviewed your December 5, 2013 letter. You appear to be attempting to raise issues concerning the administration of the State Laboratory of Hygiene during the period of your employment, which ended in 2004. Your letter does not raise any timely or clear allegations that would require further action by the university. Based upon our previous interactions and the lack of clarity in your letter, I must conclude that the university cannot be of any further assistance to you in this regard.
>
> Please direct any further communications in this regard only to me.

Dkt. 40-5, at 1-2. The next day, Rounds-Rheaume responded to Dowling's email and sought the University's assistance in her employment search. Specifically, she requested "extended reinstatement ability in order to keep looking for work at the UW in Madison without having to come up there just to take a test." *Id*. at 1. She does not explain what this means, but Dowling responded to her email this way:

> Ms. Rounds-Rheaume—As I stated in my previous e-mail, the university is not able to be of assitance to you.
>
> Also, for your information, Dr. Laessig [a former director of the Lab] retired from WSLH in 2007 and passed away at the age of 68 on March 29, 2009.

*Id*. Rounds-Rheaume does not explain how these emails intimidated her. Indeed, no reasonable juror could find that these emails intimidated her or that she did not get hired because of these emails. She also contends that the emails caused her to lose confidence at interviews, but her

7

purely subjective responses to Dowling's benign communications cannot be the basis of a retaliation claim.

   **3. Job descriptions**

Rounds-Rheaume contends that, even after she resigned, defendants continued to retaliate against her by (1) giving her prospective employers inaccurate descriptions of her past positions at the Lab and (2) threatening to do so. But she fails to adduce evidence to support either theory, so I will grant summary judgment on these claims as well.

As for the first theory, Rounds-Rheaume adduces no evidence that defendants gave any job description—accurate or not—to any of her prospective employers. Rounds-Rheaume interviewed with two companies for security officer positions, but these companies did not hire her for unknown reasons. Dkt. 40-6, at 1-2. Rounds-Rheaume says, "After investigating the reason I was not hired I believe that the conflict with the respondent affected my interview in a negative manner." *Id*. at 1. Rounds-Rheaume's vague speculation is not admissible evidence that could establish that defendants sent those companies any inaccurate description of her past jobs.

Rounds-Rheaume also contends that defendants threatened to send inaccurate descriptions of her past jobs. She states,

> As Mr. Dowling stated in his email to me that they cannot assist
> me in finding employment, but they can dis-assist me by a false
> position description.

Dkt. 40-4. I take Rounds-Rheaume to mean that defendants threatened to interfere with her job search and that they did so through Dowling's emails. But Dowling's emails, at least the ones Rounds-Rheaude adduce, are discussed above; they are not threatening. Rounds-Rheaume

8

also alludes to a letter from Vaughan, Dkt. 40, ¶ 4, but that letter, too, does not contain any threat, Dkt. 40-16, at 1-2.

The job description itself is not false either. The job description says Rounds-Rheaume must,

> Have working knowledge of Security Policy for the WSLH including, signing customers in and preparing the appropriate badge and identifying unusual packages or deliveries.

Dkt. 40-7, at 1. Rounds-Rheaume argues that this job description is false because it leaves out controlling entrance access and checking IDs. *Id*. But the job description includes "signing customers in," so a prospective employer can infer that her duties included controlling entrance access and checking IDs. Besides, Rounds-Rheaume has not adduced evidence that any defendant provided this job description to any prospective employer.

**B. First Amendment retaliation claims**

Rounds-Rheaume initially alleged that individual defendants retaliated against her for reporting crime and corruption to various government agencies. Dkt. 1, at 2-3. Her allegations in the complaint were vague, and she did not give details on what she reported and how defendants retaliated against her. At summary judgment, she clarifies that individual defendants retaliated against her through Dowling's emails and by providing inaccurate job descriptions. Dkt. 40, ¶¶ 19, 24. I will dismiss her First Amendment retaliation claims because she adduces no evidence of retaliation on this basis either.

To state a claim for unlawful retaliation in violation of the First Amendment, a plaintiff must show: "(1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a

motivating factor in her employer's adverse action." *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

Rounds-Rheaume cannot satisfy the second requirement. As discussed above, Dowling's emails are not intimidating, and Rounds-Rheaume adduces no evidence that defendants interfered with her job search.

ORDER

IT IS ORDERED that:

1. Plaintiff June E. Rounds-Rheaume's motion for summary judgment, Dkt. 36, is DENIED.

2. Defendants Board of Regents of the University of Wisconsin System, John C. Dowling, Brian D. Vaughan, Sandra K. Prisbe, Cynda Demontigny, and Barb Woehrl's motion for summary judgment, Dkt. 45, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants and close the case.

Entered August 30, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge